Jake **HESS II, James Birchfield and Wife, Alice Birchfield, and Chad Breeding, Appellants,**

v.

**McLEAN FEEDYARD, INC., A Texas Corporation, Appellee.**

No. 07–99–0519–CV.

Court of Appeals of Texas, Amarillo.

Nov. 28, 2000.

---

Garner & Stein LLP (Robert E. Garner and Ana E. Estevez), Amarillo, for appellant.

Mullin Hoard & Brown LLP (David Mullin and Wolf Puckett), Amarillo, for appellee.

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

DON H. REAVIS, Justice.

Appellants Jake Hess II, James Birchfield and wife, Alice Birchfield, and Chad Breeding (collectively landowners) present this appeal from a summary judgment that they take nothing against McLean Feedyard, Inc., on their action for damages allegedly caused by the contamination of their surface and ground water. By issues one through four, the landowners contend that genuine issues of material fact precluding summary judgment were raised as to causation. By issues five through eight, they contend the trial court abused its discretion in excluding affidavits as summary judgment evidence that were relevant, material, and proper, and by considering evidence to which they made proper objections. Based on the rationale expressed herein, we affirm.

McLean owns 960 acres of land in Donley County and maintains a commercial feedyard covering approximately 101 acres of pens located on a ridge, with a permitted capacity of 25,000 cattle. The McLean property is upgrade and north of the landowners' properties. The feedyard collects and holds waste from the cattle and accumulates diffused surface water and cattle waste into a system or series of ponds known as lagoons. The discharge gates of the lagoons are located approximately one mile from the nearest property owned by landowner Hess, where he held 4000 cattle for his preconditioning operations. The area is drained by two watersheds described here as the Little Skillet Creek watershed, containing approximately 2000 acres, and the Skillet Creek watershed containing approximately 10,600 acres. Little Skillet Creek enters the McLean property at its eastern boundary, flows in a southwesterly direction and enters the 1001–acre Hess tract that joins the McLean tract on the south, and then ultimately flows into Skillet Creek. Skillet

Creek headwaters are located to the north and west of the McLean property. Skillet Creek flows generally to the southeast and joins Little Skillet Creek on the Hess tract and then proceeds south to the 160–acre Birchfield property. The McLean property is not located in the Skillet Creek watershed. The 640–acre Breeding tract is located two and one-half miles south and more than one mile east of the McLean tract and is not located in either watershed. As relevant here, the natural flow of surface water is from north to south.

McLean has permits to operate the feedyard from the Texas Natural Resources Conservation Commission (TNRCC) and the United States Environmental Protection Agency (EPA). The permits require McLean to maintain the retention ponds in a condition sufficient to hold a 5.5 inch rainfall within a 24 hour period, or a chronic rainfall (defined as a period of wet weather which would not provide the opportunity for dewatering and that totals or exceeds the 5.5 inch rainfall event). From 6:45 p.m. on April 2, 1997, to 6:30 a.m. on April 4, 1997, the feedyard received 12.25 inches of rain, which caused an overflow discharge from the retention ponds. Then from 11:00 a.m. on April 8 to 6:00 a.m. on April 11, an additional 1.63 inches of rain was received that caused another overflow from the retention ponds. Then, between 11:00 p.m. on April 21 and 6:00 p.m. on April 27, another 4.85 inches of rain was received that caused another discharge from the retention ponds. All three discharges were reported to the TNRCC and the EPA. Water from the three discharges crossed the McLean property through various heavy grasses and brush designed to impede and filter any discharge from the ponds, and continued into Little Skillet Creek. At the time of each discharge the water in Little Skillet Creek was moving at a very rapid rate of flow. No one measured or tested the volume or content of the discharges as they entered Little Skillet Creek; however, because the discharges were the overflow from retention ponds, during a period of unprecedented rainfall, McLean contends that most of the discharge was rainwater. McLean does not deny that the discharges also contained manure and its byproducts, but does contend that these items were so diluted by the huge volume of water passing through Little Skillet Creek that no damages were caused to the landowners from the discharges.

■ Claiming that McLean had contaminated their fresh water to the point that their underground and surface water is no longer potable and is not suitable for consumption or use by man or livestock, the landowners filed suit against McLean alleging multiple theories by which the landowners claimed damages caused by McLean's operations. In response, McLean filed a no-evidence motion for summary judgment pursuant to Rule 166a(i) [1] asserting there was no evidence of causation and also contending that it was entitled to a traditional summary judgment under Rule 166a(c), because its summary judgment evidence established the absence of causation as a matter of law. By their response to the McLean motion, among other matters, the landowners submitted affidavits of three landowners, a portion of the deposition of McLean's feedyard manager, and the affidavit of their expert witness, A.L. Baxley, Ph.D. Also, landowners objected to the affidavits of Neal Odom, David Parker, William Rogers, and Gregg Veneklasen submitted in support of McLean's motion. McLean responded to the landowners' response by, among other things, objecting to portions of the affidavits of Jake Hess

---

1. All references to Rule 166a are to the Texas Rules of Civil Procedure.

II and Dr. William W. Breeding, and by filing objections and a motion to strike the affidavit of landowners' expert A.L. Baxley, Ph.D. Following a hearing, the trial court signed its order sustaining McLean's motion to strike the affidavit of Baxley, sustaining objections to portions of the affidavits of Jake Hess II and William W. Breeding, denying landowners' objections to the summary judgment affidavits submitted by McLean, granting McLean's motion for summary judgment, and denying landowners any relief. Because the judgment does not specify or state the grounds relied on, it is subject to affirmance if any of the grounds presented in the motion are meritorious. Carr v. Brasher, 776 S.W.2d 567, 569 (Tex.1989); Roth v. FFP Operating Partners, 994 S.W.2d 190, 195 (Tex. App.—Amarillo 1999, pet. denied). Because we conclude the trial court did not err in striking the affidavit of the landowners' expert and that the no-evidence motion for summary judgment of McLean was meritorious, we will limit our review to the propriety of the trial court's ruling on these two matters.

Before we consider the decision of the trial court to strike the affidavit of landowners' expert and the propriety of the summary judgment, we first consider the landowners' contention presented as an unnumbered sub-issue in their argument, that the order of the trial court was overly broad because it addressed a cause of action not addressed in the motion for summary judgment. Landowners argue that because they filed their third amended petition presenting claims for trespass and negligence *per se,* and McLean did not amend its motion to address these claims, the summary judgment was improperly rendered because it was overly broad. We disagree.

■ By their second amended petition, among other things, landowners al-

leged trespass and violation of the TNRCC rules as grounds for their action. By its motion for summary judgment that followed the second petition, among other things, McLean asserted that the TNRCC and the EPA had determined that McLean did not cause any damages to the landowners and sought summary judgment solely on the grounds of no causation. Because the motion for summary judgment was sufficient to give landowners fair notice of the contention of no evidence of causation and defined the issues, the requirement of specificity was satisfied. *Roth,* 994 S.W.2d at 194. Further, because the landowners did not present in writing to the trial court any claim that McLean's motion was deficient, they cannot present these grounds for reversal on appeal. *Id.* at 195. Also, landowners do not contend that causation is not an essential element of any claim which they presented, whether sounding in tort, trespass, or otherwise. *See* Riojas v. Lone Star Gas Co., Etc., 637 S.W.2d 956, 959 (Tex.Civ.App.—Fort Worth 1982, writ ref'd n.r.e .), holding that there can be no recovery by a party unless the injuries or damages be caused by actions of the other party. Instead, they commence the summary of their argument by stating that their first four issues demonstrate trial court error in granting the motion because there "are genuine issues of material fact raised in the evidence with respect to causation." Moreover, during oral argument, counsel for landowners acknowledged that causation was an essential element of the landowners' claims. Accordingly, we overrule landowners' contention that the judgment was overly broad. We next address the landowners' contentions in a logical rather than sequential order.

### Expert Testimony by Affidavit of Landowners' Expert

■ By issue five, the landowners contend the trial court abused its discretion

by improperly striking the affidavit of A.L. Baxley, Ph.D. as summary judgment evidence. We disagree. The proponent of expert testimony by affidavit in a summary judgment proceeding has the burden to provide an affidavit which satisfies the requirements of summary judgment practice, *see* Rule 166a(f), and also the burden to demonstrate that the opinion offered meets the requirements of Texas Rules of Evidence 702, 703, 401, and 403. Under Rule 166a(f) affidavits must be based on personal knowledge and "shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Further, Rule 166a(c) concludes that opinion testimony of experts must be "clear, positive and direct, otherwise credible and free from contradictions and inconsistencies," and subject to being "readily controverted."

In addition to the rules applicable to motions for summary judgment, Rules of Evidence 702, 703, 401, and 403, E.I. du Pont de Nemours & Co. v. Robinson, 923 S.W.2d 549 (Tex.1995), and its progeny place the trial judge in the role of gatekeeper who determines the admissibility of expert evidence. The proponent has the burden to prove that the expert is qualified and to demonstrate that he possesses the special knowledge as to the very matter under consideration. *Gammill v. Jack Williams Chevrolet, Inc.,* 972 S.W.2d 713, 718–19 (Tex.1998). Whether an expert witness is qualified to testify is committed to the discretion of the trial court and no difference obtains between the standards for evidence that would be admissible in a summary judgment proceeding and those applicable at a regular trial. *United Blood Services v. Longoria,* 938

S.W.2d 29, 30–31 (Tex.1997). In determining whether the testimony is admissible, the trial court does not determine whether the expert's conclusions are correct, but only whether the analysis used to reach the conclusions is reliable. *Gammill,* 972 S.W.2d at 728. As an appellate court, we do not consider the admissibility or inadmissibility of the evidence *de novo.* Instead, we test abuse of discretion of the trial court by whether the trial court acted without reference to any guiding rules or principles. *Longoria,* 938 S.W.2d at 31; *E.I. du Pont de Nemours,* 923 S.W.2d at 558.

In response to McLean's motion for summary judgment, the landowners submitted the affidavit of Baxley as proof "that the damages that" they sustained were caused by McLean.[2] Following 16 single-spaced pages, Baxley ends his affidavit with ten conclusions, of which only the first two are material to our consideration, to wit:

1. Defendant has contaminated Plaintiffs' surface water to the point that it is no longer potable, and in fact is hazardous to humans who consume it.

2. Defendant has contaminated Plaintiffs' underground fresh water with high levels of coliform bacteria and has caused the underground fresh water to be non-potable, dangerous, and hazardous to humans who consume it.

It is important to note that the expert does not conclude that the water was hazardous to livestock.

After stating his academic and professional experience as a chemical engineer for 39 years in the design and construction of chemical plans, the evaluation of hazardous workplace situations, and worker expo-

2. Landowners did not assert in their response that the other affidavits submitted with their response constituted evidence of causation.

sure to chemicals, Baxley discloses his litigation experience in groundwater and aquifer contamination problems. Then, he devotes three pages to discredit reports of the TNRCC and describes his work at another location in the Texas Panhandle. McLean responded with numerous objections to 14 specific sections (group) of the affidavit. However, for purposes of our review, we consider the sections and objections summarized as follows:

Section 6.

AFFIANT: Affiant discredits report of TNRCC and EPA showing no causation and states that conclusion is flawed without stating reasons.

OBJECTION: Unsupported conclusory assertions are not summary judgment evidence; other chemical cases are irrelevant to causation.

Section 7.

AFFIANT: The surface water is no longer potable and, in fact, is hazardous to humans and to livestock who consume it.

OBJECTION: Not supported by any evidence that the water was ever potable in Skillet Creek and Little Skillet Creek.

Section 11.

AFFIANT: Underground Fresh Water is no longer potable and possesses high levels of bacterial coliform and, in fact is hazardous and dangerous to humans and livestock who consume it.

OBJECTION: Unsupported conclusory statement not summary judgment proof.

CONCLUSIONS. P. 17–18.

AFFIANT: Conclusions one and two that surface and ground water no longer potable and hazardous to humans who consume it.

OBJECTION: Unsupported and unreliable conclusions are inadmissible evidence that McLean caused alleged contamination of underground and surface water on Plaintiffs' properties.

### Discussion under Sections 6, 7, 11 and Conclusions

■■■ The portions of the affidavit that constitute conclusions are not sufficient to raise an issue of fact. Wadewitz v. Montgomery, 951 S.W.2d 464, 467 (Tex. 1997); Brownlee v. Brownlee, 665 S.W.2d 111, 112 (Tex.1984). Where, as here, the expert's affidavit fails to provide supporting facts, his bare conclusion is not evidence. Mitchell Energy Corp. v. Bartlett, 958 S.W.2d 430, 447 (Tex.App.—Fort Worth 1997, pet. denied).

■■■ Moreover, under Rule of Evidence 703, an opinion of an expert must be based upon facts or data perceived or reviewed during or before trial. Also, under Rule 166a(f) affidavits must be made on personal knowledge and must affirmatively show competency to testify. Although weakness of facts in support of an expert's opinion generally goes to the weight of the testimony and not its admissibility, nevertheless an expert opinion regarding causation that is based completely upon speculation and surmise amounts to no evidence. Schaefer v. Texas Emp. Ins. Ass'n, 612 S.W.2d 199, 204–05 (Tex.1980); Onwuteaka v. Gill, 908 S.W.2d 276, 283 (Tex.App.—Houston [1st Dist.] 1995, no pet.). In Golleher v. Herrera, 651 S.W.2d 329, 334 (Tex. Civ.App.—Amarillo 1983, no writ), this Court held that opinion unsupported by facts before the court is a naked conclusion which will not support a jury finding even when admitted without objection. There, because the opinion of the expert was based on his assumption of an unproved fact, the motion to strike the opinion should have been granted.

In addition, an expert should carefully consider and rule out alternative causes, and the failure to rule out other causes results in speculation and conjecture and amounts to no evidence of causation. *Mitchell Energy Corp.*, 958 S.W.2d at 448. Although the affidavit contains some references to water quality and tests after the occurrence, even though the expert was attempting to express an opinion on causation of water contamination, his affidavit wholly fails to inform the reader of the quality of the water before the events made the basis of the underlying suit, or that his opinion was based upon other proper summary judgment evidence of water quality before the heavy rains in April 1997. Because the reasoning of the expert is not based on known or stated water quality before the heavy rains, instead of reasoning from known facts to reach a conclusion, the expert here reasoned from an end result in order to hypothesize what was needed to be known, but was not known or set out in his affidavit. Accordingly, the opinion is based on conjecture or speculation of the water quality before the heavy rains, and resultantly constitutes no evidence of causation.

Further, even though the expert attempted to rule out other potential causes, (*i.e.*, that landowner Hess runs 4000 head of cattle on his land), the failure to ascertain and consider the water quality before the events made the basis of the underlying suit renders the effort to rule out other possible causes incomplete, and therefore inconclusive. We conclude that the trial court's action in sustaining the objections and striking the affidavit was not an abuse of discretion. Issue five is overruled.

By issues three and four, the landowners contend the trial court erred in granting the summary judgment because they presented evidence that raised a fact issue on McLean's no-evidence challenge of cau-

sation and presented evidence raising genuine issues of material fact precluding summary judgment. We disagree. In reviewing the landowners' contentions, we first set forth the applicable standard of review.

## No–Evidence Summary Judgment Standard of Review

Where a motion is presented under Rule 166a(i) asserting there is no evidence of one or more essential elements of the non-movant's claims upon which the non-movant would have the burden of proof at trial, the movant does not bear the burden of establishing each element of its own claim or defense as under subparagraph (a) or (b). Rather, although the non-moving party is not required to marshal its proof, it must present evidence that raises a genuine fact issue on the challenged elements. *Roth*, 994 S.W.2d at 195; *see* Tex .R.Civ.P. 166a, Notes and Comments.

Because a no-evidence summary judgment is essentially a pretrial directed verdict, we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68, 70 (Tex. App.—Austin 1998, no pet.). Thus, our task as an appellate court is to ascertain whether the non-movant produced any evidence of probative force to raise a fact issue on the material questions presented. *Id.* We consider all the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences. *Merrell Dow Pharmaceuticals v. Havner*, 953 S.W.2d 706, 711 (Tex.1997), *cert. denied*, 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998). A no-evidence summary judgment is improperly granted if the non-movant presents more than a scintilla of probative

evidence to raise a genuine issue of material fact. *Fiesta Mart, Inc.,* 979 S.W.2d at 70–71. More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fairminded people to differ in their conclusions." *Havner,* 953 S.W.2d at 711.

By their response, the landowners contended evidence of causation was presented based on the affidavit of "their highly qualified expert Dr. A.L. Baxley." Because we have already determined the trial court did not err in striking Baxley's affidavit, the landowners did not produce any expert evidence on the element of causation. Moreover, even if the trial court erred in striking the affidavit, because, as above explained, the expert's opinion constituted a "naked conclusion," *Golleher,* 651 S.W.2d at 334, it provided no evidence of the unproven essential fact that the water was potable before the heavy rains. Accordingly, even it the affidavit was otherwise before the court, it would not have had any probative value, and would not have created a fact question as to causation. *Schaefer,* 612 S.W.2d at 204–05; *Onwuteaka,* 908 S.W.2d at 283.

■■■■ By their argument on appeal, the landowners contend that portions of the depositions and other summary judgment evidence by non-experts created fact issues precluding summary judgment. However, even if the quality of water can be the subject of non-expert testimony, a question we do not decide, as was pointed out in our analysis of the expert's affidavit, the non-expert summary judgment evidence referenced by the landowners does not discuss or establish the water quality before the events made the basis of the underlying suit. Accordingly, a fact essential to create a fact issue on causation is missing from the suggested summary judgment evidence. Moreover, because the landowners did not contend or urge in writing in the trial court that causation was also established by non-expert summary judgment evidence, the contention is not presented for our review. Tex. R.Civ.P. 166a(c); *see also* McConnell v. Southside Independent School Dist., 858 S.W.2d 337, 341 (Tex.1993); Casso v. Brand, 776 S.W.2d 551, 553 (Tex.1989); City of Houston v. Clear Creek Basin Authority, 589 S.W.2d 671, 678 (Tex.1979). Issues three and four are overruled.

We have not overlooked issues six and seven by which the landowners contend the trial court erred in striking the affidavits of Hess and Breeding. However, because the affidavits did not address the water quality before the heavy rains, they would not have constituted probative summary judgment evidence of causation of the water contamination. Moreover, as discussed above, their relevance to the causation issue was not preserved for our review. Issues six and seven are overruled.

Having affirmed the no-evidence summary judgment, our consideration of issues one, two, and eight is pretermitted for the reason that consideration of those issues would amount to an advisory opinion. Maranatha Temple v. Enterprise Products, 833 S.W.2d 736, 742 (Tex.App.—Houston [1st Dist.] 1992, writ denied).

Accordingly, the judgment of the trial court is affirmed.